In re Walter L. CLARK, Jr. & Wanda S. Clark, Debtor(s).

Bankruptcy No. 93–04664–A.

United States Bankruptcy Court, N.D. Florida, Pensacola Division.

Sept. 30, 1993.

---

W. Joel Boles, Pensacola, FL, for creditor.

Amy Logan Sliva, Pensacola, FL, for debtor.

John E. Venn, Jr., Gulf Breeze, FL, Trustee.

### ORDER ON MOTION FOR RELIEF FROM STAY

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing on the motion of Harvesters Federal Credit Union (Harvesters) for relief from the automatic stay to permit it to setoff the debtors' indebtedness to the credit union under a Visa credit card account against funds on deposit with the credit union. The debtor has objected to the relief on the basis that such setoff is prohibited under the terms of the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.* (the Act) and the Truth and Lending Regulations as set forth in 12 C.F.R. Part 226 (Regulation Z). The parties have filed their memoranda of law and in accordance with those memos this court makes the following findings of fact and conclusions of law.

The debtors are members of Harvesters having opened a joint share account on April 18, 1978. Since May 4, 1992, the account has been held jointly by the debtor Wanda Clark and her daughter Paula Clark. On the date of the debtors' petition for relief under Chapter 7, the account contained a total of $1,330.56. On November 18, 1987, the debtors applied for and were issued a Visa credit card with Harvesters and in connection therewith signed an agreement which established the terms and conditions of the line of credit for the Visa account. As of June 15, 1993, the balance due under the Visa line of credit was $1,687.49. The debtors were in default on the Visa account having failed to make their payments from January 15, 1993 and forward. The debtors filed their petition for relief under Chapter 7 of the Bankruptcy Code on July 27, 1993.

The debtors in objecting to the relief cite the provisions of 15 U.S.C. § 1666h(a) which provides in pertinent part:

(a) The card issuer may not take any action of offset a cardholder's indebtedness arising in connection with a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer unless:

(1) such action was previously authorized in writing by the cardholder in accordance with a credit plan whereby the cardholder agrees periodically to pay debts incurred in his open-end credit account by permitting the card issuer periodically to deduct all or a portion of such debt from the cardholder's deposit account;

(2) such action with respect to any outstanding disputed amount not be taken by the card issuer upon request of the cardholder.

Additionally, the provisions of the Regulation Z, 12 C.F.R., Part 226.12 contained a similar

proscription as set forth in 12 C.F.R., Part 226.12(d)(1) as follows:

(d) Offsets By a Card Issuer Prohibited.

(1) A card issuer may not take any action, either before or after termination of credit card privileges, to offset a cardholder's indebtedness arising from a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer.

(2) This paragraph does not alter or affect the right of a card issuer acting under state or federal law to do any of the following with regard to funds of a cardholder held on deposit with the card issuer if the same procedure is constitutionally available to creditors generally: obtain or enforce a consensual security interest in the funds; attach or otherwise levy upon the funds; or obtain or enforce a court order relating to the funds.

(3) This paragraph does not prohibit a plan if authorized in writing by the cardholder, under which the card issuer may periodically deduct all or part of the cardholder's credit card debt from a deposit account held with a card issuer (subject to the limitations in § 226.-13(d)(1).

Harvesters asserts that the credit card agreement signed by the debtors does in fact meet the requirements of the Act and Regulation Z so as to permit it to offset the indebtedness. Harvesters also asserts that pursuant to state and federal law it has a statutory security interest on all funds of the debtor held on deposit. Section 657.033, Florida Statutes and 12 U.S.C. § 1757(11). The specific language of the credit card agreement which Harvesters relies upon is contained in paragraph 7 of 14 paragraphs of the agreement and it provides as follows:

(7) I understand and agree that the credit union has the authority to impress and enforce a lien on all present and future shares in my name to the extent of that portion of the loan balance which may be in default, including costs of collection and reasonable attorney's fees.

The issue presented to this court is whether or not the above quoted language in the Visa agreement is sufficient to overcome the prohibition against setoff. Having reviewed the pertinent provisions of the Act and Regulation Z, we hold that the setoff sought by Harvesters in the instant case is not permitted.

■ In order for a credit card issuer to offset a cardholder's indebtedness against funds held on deposit with the card issuer, the issuer must have been given a consensual security interest in the deposits. Thus, Harvester's claim that it has been granted a statutory security interest pursuant to state and federal law does not give it a right to setoff. The distinction between statutory liens and consensual liens was discussed in the case of *U.S. v. Ron Pair Enterprises*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) as follows:

The question before us today arises because there are two types of secured claims (1) Voluntary (or consensual) secured claims, each created by agreement between the debtor and the creditor and called a "Security Interest" by the Code, 11 U.S.C. § 101(45) (1982 ed., Supp. IV), and (2) Involuntary secured claims such as a judicial or statutory lien, see 11 U.S.C. §§ 101(32) and (47) (1982 ed., Supp. IV), which are fixed by operation of law and do not require the consent of the debtor. 109 S.Ct. at 1030.

Since under Regulation Z, the credit card issuer is granted only those rights available to creditors in general, including the obtaining or enforcement of a consensual security interest, we must look to see if the agreement in question here actually accomplishes that.

■ There are two reasons which compel us to find that the paragraph 7 of the Visa agreement in question is not sufficient to constitute a consensual security agreement. The first reason is found in the language of 15 U.S.C. § 1666h(a)(2) pertaining to accounts existing prior to the effective date of that section. This provision states:

In the case of any credit card account in existence on the effective date of this section, the previous written authorization re-

ferred to in Clause (1) shall not be required until the date (after such effective date) when such account is renewed, but in no case later than one year after such effective date. Such written authorizations shall be deemed to exist if the card issuer has previously notified the cardholder that the use of his credit card account will subject any funds which the card issuer holds and deposit accounts of such cardholder to offset against any amounts due and payable on his credit card account which have not been paid in accordance with the terms of the agreement between the card issuer and the cardholder.

The effective date of that section was one year after October 28, 1974. Thus, only in those cases of credit card accounts in existence prior to October 28, 1975 was the notice such as that given in Paragraph 7 of the Harvesters agreement sufficient to constitute such written authorization for offsetting deposit accounts against credit card accounts. Since the account at issue here was opened long after the effective date of § 1666h, such notice is not sufficient to comply with the provisions of § 1666h(a)(1).

The second factor which convinces us that the language of the agreement is not sufficient lies in the fact that rather than containing an express grant of a security interest, the language of Paragraph 7 in essence recognizes the statutory lien rights of a credit union in shares of a member, in the terms used in the statute. The statutory provision giving credit unions the general authority to enforce liens on shares is found at 12 U.S.C. § 1757(11) which gives a federal credit union the power "to impress and enforce a lien upon the shares and dividends of any member, to the extent of any loan made to him and any dues or charges payable by him;". By merely acknowledging the general statutory lien rights of the credit union, we can not find that the member has expressly granted a consensual security interest in such shares so as to permit the credit union to offset the amounts due under the credit card account against shares on deposit by the member.

This conclusion is further buttressed by the commentary to 12 C.F.R. § 226.12 which, while not being binding, is instructive. The official commentary on 12 C.F.R. § 226.-12(d)(2), in explaining the limitation on security interests states:

"In order to qualify for the exception stated in § 226.12(d)(2), a security interest must be affirmatively agreed to by the consumer and must be disclosed in the issuer's initial disclosures under § 226.6. The security interest must not be the functional equivalent of a right of offset; as a result, routinely including in agreements contract language indicating that consumers are giving a security interest in any deposit accounts maintained with the issuer does not result in a security interest that falls within the exception in § 222.-12(d)(2). For a security interest to qualify for the exception under the § 226.12(d)(2) the following conditions must be met:

The consumer must be aware that granting a security interest is a condition for the credit card account (or for more favorable account terms) interest in a deposit account. Indicia of the consumer's awareness and intent could include, for example:

—Separate signature or initials on the agreement indicating that a security interest is being given.

—Placement of the security agreement on a separate page, or otherwise separating the security interest provisions from other contract and disclosure provisions.

—Reference to a specific amount of deposited funds or to a specific amount of deposited funds or to a specific deposit account number.

The security interest must be obtainable and enforceable by creditors generally. If other creditors could not obtain a security interest in the consumer's deposit accounts to the same extent as the card issuer, the security interest is prohibited by § 226.12(d)(2)."

The agreement in this case does not even approach any of the examples set forth in the commentary.

Accordingly, we find that Harvesters does not have an enforceable right of setoff

against the debtor's credit union account shares and Harvesters' Motion for Relief from Stay is hereby DENIED.

DONE AND ORDERED.